UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| CASHMAN EQUIPMENT CORP., ET AL, | * * * | CIVIL ACTION LEAD CASE NO. 2:15-cv-396; MEMBER CASE NO. 15-1956 |
| Plaintiffs, | * * | |
| v. | * * | JUDGE MINALDI |
| OFFSHORE CONTRACTORS, LTD., | * * | |
| Defendants. | * | MAGISTRATE JUDGE KAY |

*******************************************************************

## MEMORANDUM RULING

Before the court is a Motion for Partial Summary Judgment (Rec. Doc. 87) filed by C&G Welding, Inc. ("C&G"), an Opposition (Rec. Doc. 113) filed by Offshore Contractors, Ltd. ("Offshore Contractors"), a Response (Rec. Doc. 177) filed by C&G, a Response (Rec. Doc. 181) filed by Offshore Contractors, a Motion for Partial Summary Judgment (Rec. Doc. 165) filed by Cashman Equipment Corporation ("Cashman") and Servicio Marina Superior, L.L.C. ("Servicio"), a Response (Rec. Doc. 172) filed by Bear Marine Services, Ltd. ("Bear Marine"), and a Motion for Summary Judgment (Rec. Doc. 167) filed by Union Bank of Nigeria, PLC ("Union Bank"), an Opposition (Rec. Doc. 171) filed by Cashman and Servicio, an Opposition (Rec. Doc. 173) filed by Bear Marine, and a Reply (Rec. Doc. 183) filed by Union Bank. For the following reasons, C&G's Motion for Partial Summary Judgment (Rec. Doc. 87) is **GRANTED IN PART AND DENIED IN PART**, Cashman and Servicio's Motion for Partial Summary Judgment (Rec. Doc. 165) is **GRANTED**, and Union Bank's Motion for Summary Judgment (Rec. Doc. 167) is **DENIED**.

1

## FACTS & PROCEDURAL HISTORY

On February 18, 2015, Cashman and Servicio filed a Motion for Writ of Garnishment of the GLOBAL IROQUOIS pursuant to Rule B of the Supplemental Rules for Admiralty or Maritime Claims as Asset Forfeiture Actions ("Rule B").[1] The following day, the United States Marshals Service executed a Writ of Maritime Attachment pursuant to Rule B by taking the vessel into its possession and affixing notice thereto.[2] On April 15, 2015, a first preferred ship mortgage over the GLOBAL IROQUOIS was granted by Offshore Contractors in favor of Union Bank.[3] The mortgage was accepted by and registered with the Office of the Deputy Commissioner of Maritime Affairs of the Republic of Vanuatu on April 20, 2015.[4] Bear Marine filed a Motion to Intervene on April 20, 2015,[5] which the court granted on June 15, 2015.[6] Union Bank filed a motion to intervene on October 28, 2015.[7] On November 3, 2015, a Consent Judgment was entered into between Cashman and Servicio and Offshore Contractors, among other defendants, recognizing prior judgments entered in favor of Cashman and Servicio.[8] On November 13, 2015, Union Bank was permitted to intervene.[9] C&G filed its motion for partial summary judgment on July 23, 2015.[10] On December 4, 2015, Cashman and Servicio and Union Bank filed their respective motions for summary judgment.[11]

---

[1] Mot. for Writ of Garnishment of *Global Iroquois* (Rec. Doc. 2).
[2] *See* Write of Maritime Attachment (Rec. Doc. 10).
[3] *See* Ex. A-4, Deed of Mortgage (Rec. Doc. 167-4).
[4] *Id.*
[5] Mot. to Intervene (Rec. Doc. 30).
[6] Electronic Order (Rec. Doc. 50).
[7] Mot. to Intervene (Rec. Doc. 141).
[8] Consent J. (Rec. Doc. 145).
[9] Minutes (Rec. Doc. 153).
[10] Mot. for Partial Summ. J. (Rec. Doc. 87).
[11] Mot. for Partial Summ. J. (Rec. Doc. 165); Mot. for Summ. J. (Rec. Doc. 167).

## LAW & ANALYSIS

A grant of summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is said to be "genuine" only where a "reasonable jury could return a verdict for the non-moving party." *Dizer v. Dolgencorp, Inc.,* No. 3:10-cv-699, 2012 U.S. Dist. LEXIS 24025, at *16 (W.D. La. Jan. 12, 2012) (citing *Fordoche, Inc. v. Texaco, Inc.,* 463 F.3d 388, 392 (5th Cir. 2006)). "Rule 56[(a)] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Webber v. Christus Schumpert Health Sys.,* No. 10-1177, 2011 U.S. Dist. LEXIS 99235, at *14 (W.D. La. Sept. 2, 2011) (citing *Patrick v. Ridge,* 394 F.3d 311, 315 (5th Cir. 2004)).

In ruling upon a motion for summary judgment, the district court shall draw all inferences in a light most favorable to the nonmoving party. *Id.* at *3 n. 1 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986) (additional citation omitted)). However, the court will not, in the absence of proof, "assume that the nonmoving party could or would prove the necessary facts." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990)). "The non-movant cannot preclude summary judgment by raising 'some metaphysical doubt as to the material facts, conclusory allegations, unsubstantiated assertions, or by only a scintilla of the evidence.'" *Cormier v. W&T Offshore, Inc.,* No. 10-1089, 2013 U.S. Dist. LEXIS 53416, at *18-19 (W.D. La. Apr. 12, 2013) (citing *Little,* 37 F.3d at 1075).

PREFERRED SHIP MORTGAGE

The Ship Mortgage Act, 46 U.S.C. §§ 31301-43 ("the Act"), governs the priority of claims and sets forth the required showing to establish a preferred mortgage on a vessel. The Act provides that the holder of a foreign mortgage lien "may be afforded 'preferred mortgage' status if the mortgage has been [1] duly and validly executed and [2] duly registered under the (applicable) foreign law." *Nevi Mar. Co. v. M/V ALEXANDER'S UNITY*, No. 92-2561, 1993 WL 386257, at *2 (E.D. La. Sept. 21, 1993) (alteration in original) (internal quotation marks omitted) (citing 46 U.S.C. § 31301(6)(B)) (additional citations omitted). Under the Act, a "preferred mortgage is a lien on the mortgaged vessel." 46 U.S.C. § 31325(a). Section 11 of the Vanuatu Maritime Act states that the "nonstatutory general maritime law of the United States of America is hereby declared to be and is hereby adopted as the general maritime law in respect of all vessels registered under [the Vanuatu Maritime] Act." It is well established general maritime law of the United States that once a vessel is in *custodia legis*, no liens may attach to that vessel. *Oil Shipping (Bunkering) B.V. v. Sonmez Denizcilik Ve Ticaret A.S.*, 10 F.3d 176, 178 (3d Cir. 1993) (citing *Kingstate Oil v. M/V GREEN STAR*, 815 F.2d 918, 922-24) (3d Cir. 1987)).

Cashman, Servicio, and Bear Marine argue that the mortgage is null and void under the Act because it was executed on April 15, 2015, two months after the GLOBAL IROQUOIS was placed in *custodia legis*. Union Bank responds that because the alleged debt was incurred before the court took custody of the vessel, it had the authority to create a lien even if the GLOBAL IROQUOIS was in judicial custody. Cashman, Servicio, and Bear Marine cite to an array of cases[12] to bolster their position that no liens may attach to a vessel in judicial custody, all of

---

[12] *The Poznan*, 274 U.S. 117, 120 (1927) ("[A]fter the arrest of the ship, and while it was in the custody of the law, no maritime lien could attach . . . ."); *Collie v. Fergusson*, 281 U.S. 52, 55 (1930) ([G]eneral rule that events subsequent to the seizure do not give rise to liens against a vessel in custodia legis."); *The Astoria*, 281 F. 618, 622 (5th Cir. 1922) ("[N]o maritime lien in favor of the crew for wages after the vessel was placed in the custody of the

4

which Union Bank attempts to distinguish by noting that none involved the validity of a mortgage where the indebtedness it secured was incurred before the arrest and was for the purchase of the vessel.

Regardless of when the debt was incurred, the law is clear that liens may not attach to a vessel in *custodia legis*. The parties all agree that the mortgage took place after the GLOBAL IROQUOIS was in judicial custody, and Union Bank does not dispute that the mortgage is a maritime lien. The fact that the debt was used to secure the purchase of the vessel is irrelevant. Union Bank was free to execute a mortgage on the GLOBAL IROQUOIS anytime up to the point at which the vessel was placed in *custodia legis*, but it failed to do so. The court finds that the preferred mortgage on the GLOBAL IROQUOIS was not duly executed because it occurred after the vessel was in judicial custody, and thus the mortgage is not afforded "preferred mortgage" status under the Act.

### RULE B ATTACHMENT

For a Rule B attachment to issue, a plaintiff must have "a valid prima facie admiralty claim against the defendant." *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 445 (2d Cir. 2006). In determining whether a contract gives rise to maritime jurisdiction, courts should look to "the nature of the character of the contract, and the true criterion is whether it has reference to maritime service or maritime transactions." *Norfolk S. Ry. Co. v. Kirby*, 125 S.Ct. 385, 393 (2004) (citations omitted) (internal quotation marks omitted). "In order to be considered maritime, there must be a direct and substantial link between the contract and the operation of

---

law . . . ."); *Donald D. Forsht Assocs., Inc. v. Transamerica ICS, Inc.*, 821 F.2d 1556, 1561 (11th Cir. 1987) ("[N]o lien can attach to a vessel while she is in judicial custody."); *Dresdner Bank AG v. M/V OLYMPIA VOYAGER*, 465 F.3d 1267, 1272 (11th Cir. 2006) ("[T]he long established rule in admiralty law is that 'no lien can attach to a vessel while she is in judicial custody.'"); *Empresa Nacional v. M/V Tropicana*, 1971 A.M.C. 1583, 1585 (E.D. La. 1970) ("[A]s a general rule, no liens may arise against a vessel while it is in *custodia legis* . . . ."); *Oil Shipping (Bunkering) v. Royal Bank of Scotland plc*, 817 F. Supp. 1254, 1259 (E.D. Pa. 1993) ("[S]eizure revokes all authority to incur liabilities on behalf of the vessel.").

5

the ship, its navigation, or its management afloat . . . ." *Alphamate Commodity GMBH v. CHS Europe SA*, 627 F.3d 183, 187 (5th Cir. 2010). "It is well-established that a charter party agreement is a maritime contract." *Fednav, Ltd. v. Isoramar, S.A.*, 925 F.2d 599, 601 (2d Cir. 1991). Courts have found "that an admiralty court can review questions of . . . alter ego." *Vitol, S.A. v. Primerose Shipping Co. Ltd.*, 708 F.3d 527, 538 (4th Cir. 2013) (citations omitted).

On October 15, 2010, OPI International Contractors, Ltd. ("OPI International"), executed separate charter agreements with Cashman and Servicio.[13] When OPI International failed to pay for charter hire and damage to the vessels, Cashman and Servicio each filed suit to recover past due amounts and obtained the judgments sought to be collected herein.[14] Even though there are alter ego issues, Cashman and Servicio have maritime claims, and thus the Rule B attachment was proper.

Bear Marine argues that its Participation Agreement[15] with OPI International Nigeria, Ltd. ("OPI Nigeria"), was maritime in nature because it was based on Bear Marine securing maritime contracts surrounding extensive oil and gas work to occur in Nigerian Water. According to Bear Marine, the contract called for "marine support vessel services [and] offshore construction series and related services in the . . . offshore waters of Nigeria."[16] However, a review of the services enumerated in Article 2 of the Participation Agreement reveals that they do not have a sufficiently direct and substantial link to maritime activities. Thus, the court finds that Bear Marine's contract with OPI Nigeria was not maritime in nature.

---

[13] Compl. (Rec Doc. 1) ¶ 31.
[14] *Id.* ¶ 32.
[15] *See* Ex. A, Participation Agreement (Rec. Doc. 55-1), at 1-11.
[16] *Id.* at 4.

6

CONSENT JUDGMENT

Union Bank asserts that Cashman, Servicio, and Bear Marine are not creditors of Offshore Contractors, but instead that Cashman and Servicio are judgment creditors of OPI International, and that Bear is a creditor of OPI Nigeria. Thus, Union Bank argues, Cashman, Servicio, and Bear Marine are not entitled to proceeds from the sale of the vessel because none of them were creditors of the entity that owned the vessel, Offshore Contractors. Union Bank frames the Consent Judgment, which makes previous judgments in favor of Cashman and Servicio against OPI International enforceable against Offshore Contractors, as nothing more than a settlement agreement that is incapable of establishing whether those entities are alter egos of one another. In support of this view, Union Bank cites *Martin v. Wilks*, a case in which the Supreme Court found that consent decrees between a local government and black firefighters did not preclude white firefighters from asserting federal employment rights inconsistent with those consent decrees. 490 U.S. 755, 761-63 (1989).

By entering into the Consent Judgment, Offshore Contractors essentially judicially confessed that it was an alter ego of OPI International. There is a presumption that the Consent Judgment is true, and Union Bank has failed to offer anything other than speculation to overcome this presumption. Moreover, unlike the white firefighters in *Martin* that sought to assert an established legal right, Union Bank does not have a legal right to force Offshore Contractors to argue that OPI International is not its alter ego. Union Bank did have the legal right to timely execute a preferred mortgage that would have protected its interests, or to more timely intervene in the matter and raise any objections to the proposed Consent Judgment before it was granted, but it slept on those rights.

7

### CASHMAN AND SERVICIO'S CLAIMS TAKE PRIORITY OVER THOSE OF BEAR MARINE

In their motion for summary judgment, Cashman and Servicio argue that their claims outrank and take priority over any of Bear Marine's claims. In its response, Bear Marine acknowledges that it is only entitled to any proceeds of the sale of the vessel that exceed Cashman and Servicio's judgments. Thus, Cashman and Servicio's motion is **GRANTED**.

### C&G'S MOTION FOR SUMMARY JUDGMENT

C&G's motion sought judgment against Offshore Contractors granting it the full amount of its past due invoices and for attorney's fees and costs. Offshore Contractors agrees that it owes C&G the sum of $234,079 for past due invoices,[17] and C&G has waived its claim for attorney's fees and costs.[18] Thus, C&G's motion is **GRANTED IN PART AND DENIED IN PART AS MOOT**.

Lake Charles, Louisiana, this 25 day of March, 2016.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE

---

[17] *See* Resp. (Rec. Doc. 181).
[18] *See* Resp. (Rec. Doc. 177).